Cole *v.* Lee.

## RUFUS COLE *versus* JOHN LEE.

Where a second mortgagee of land, ignorant of a prior mortgage, discharged the second mortgage, in consideration of a quitclaim deed of the land, from the mortgager, with covenants of warranty against all claims under or through him; said grantee, after purchasing in the prior mortgage and the debt secured by it, is entitled to recover upon said covenants, against the grantor, the amount paid upon such purchase; provided it was not a greater sum than was due upon the prior mortgage.

The law has not prescribed any form of words, necessary to constitute a warranty in a deed of land.

The prior mortgage is a legal claim, in the nature of an incumbrance. A subsequent grantee has a right at any time to discharge it, and resort to his covenants for redress, even though no measures have been taken to deprive him of the possession of the land.

COVENANT BROKEN. The declaration contained several counts; one upon the covenants in a mortgage deed of land from the defendant to the plaintiff, dated November 21, 1837, and another upon the covenants in a quitclaim deed from the defendant to the plaintiff, dated October 5, 1843.

At the trial, before HOWARD, J., the plaintiff offered a registered copy of a mortgage, made May 14, 1836, from the defendant to one Nickerson, with an assignment thereof to Jabez Snow, made in March, 1837, together with the notes secured thereby; also a mortgage deed, with covenants of general warranty, made Nov. 21, 1837, from the defendant to the plaintiff; also an assignment made September 20, 1847, by Snow to the plaintiff, of the first named mortgage, with the note secured thereby.

The defendant then called upon the plaintiff for the deed of defendant to the plaintiff, dated October 5, 1843, which was produced and read. It was a quitclaim deed of the same premises described in the defendant's mortgage to plaintiff. At the close of the description of the premises, released in this deed, was the following: — "N. B. The mortgage deed given by said Lee to said Cole, Nov. 21, 1837, is fully annulled and satisfied."

Evidence was introduced by each party, as to the value of the premises at the time of the last conveyance to the plaintiff.

There was a controversy relating to the identity of the lands covered by the respective deeds. That matter is sufficiently stated in the opinion of the Court.

The cause was thereupon taken from the jury by consent, and reserved for the consideration of the Court upon the foregoing evidence. Judgment is to be rendered upon nonsuit or default, according to the rights of the parties.

*J. & M. L. Appleton,* for plaintiff.

The plaintiff claims damages for the breach of the covenants in the mortgage deed of November 21, 1837, and those in the deed of October 5, 1843.

The defendant says this mortgage deed to the plaintiff is canceled by deed from defendant to plaintiff, of October 5, 1843. Such was not the intention, and the law is believed to be otherwise. *Crosby* v. *Chase,* 17 Maine, 369.

But if the mortgage was canceled, then plaintiff claims to recover by virtue of the covenant in the quitclaim deed of 1843.

This was an engagement against every existing title, created by the defendant, paramount and adverse to the title supposed to be conveyed by the defendant to the plaintiff. *Everts* v. *Brown,* 1 Chip. 99; 9 Verm. 191.

*Peters,* for defendant.

The evidence is contained in the deeds, made a part of the case.

The defendant mortgaged to Nickerson, then mortgaged to plaintiff, and afterwards quitclaimed to him, discharging the mortgage.

No action will lie here on the covenants in the *mortgage* deed from defendant to plaintiff, because that mortgage deed has been expressly and deliberately *discharged* and *satisfied* by a clause in the deed of quitclaim, afterwards given by defendant to plaintiff. That mortgage cannot be upheld for any purpose, when it has been discharged and satisfied by *agreement* of *parties.* It is presumed some benefit and purpose was intended by the agreement, and the parties are bound by it.

The law will not uphold a deed against positive agreement ·of parties.

There is no warranty in the second deed, (being the said quitclaim deed,) upon which this action will lie.

The parties intended for plaintiff to take the lot as it was, and give up the mortgage notes ; and therefore the release deed was given. The plaintiff was to take the land for what it was worth, and whatever title the defendant had in it.

TENNEY, J. — The first two counts in the writ, are for the breach of the covenant in the defendant's deed to the plaintiff, of October 5, 1843 ; and the breach assigned is the outstanding mortgage to Nehemiah K. Nickerson, dated May 14, 1836, which it is alleged, covers the same premises. And it is further alleged in one of these counts, that there was at the time of executing the deed of October 5, 1843, a mortgage previously given to Nickerson, which existed at the date of the writ, an incumbrance upon the land. And in another count it is alleged, that the mortgage to Nickerson was assigned to one Jabez Snow, March 22, 1839, and that the same was afterwards assigned to the plaintiff ; and the sum secured thereby has never been paid. The third count in the writ is an alleged breach of the covenant of warranty, in the mortgage deed of the defendant to the plaintiff, dated November 21, 1837, of the same land, and it is averred that the covenant was broken by the mortgage to Nickerson, dated May 14, 1836.

It is contended in defence, that the land described in the deed of October 5, 1843, and in the mortgage of November 21, 1837, is not embraced in the mortgage to Nickerson, of May 14, 1836, upon a proper construction of the language employed. The last named mortgage was given to secure the whole or a part of the purchase money, for land conveyed on the same day by Nickerson to the defendant, describing in the deed a lot of land in Bucksport, which it is admitted is the same conveyed in the mortgage deed of Nov. 21, 1837, and in the deed of October 5, 1843, to the plaintiff. The deed from Nickerson to the defendant, also contains the description of a

lot of land in Prospect, and conveys the right of the grantor in the Bucksport and Prospect ferry. The mortgage from the defendant to Nickerson describes the subject-matter of the conveyance, as follows : — "All the right, title and interest, which I have in and to a certain lot of land, situated in said Bucksport, and also one other lot, situated in Prospect, county of Waldo, as also the Bucksport and Prospect ferry, which I hold by virtue of a deed from Nehemiah K. Nickerson to me, dated this fourteenth day of May, 1836, and for a more particular description of said premises, reference is had to said deed, meaning to convey to said Nickerson all the right, title and interest, that said Nickerson has conveyed to me, as also, the new horse-boat, now in Brewer, and intended to run between Bucksport and Prospect." The description and references in this mortgage deed are so clear and full, that no reasonable doubt can be entertained, that all the land and privileges conveyed by Nickerson to the defendant, was re-conveyed in mortgage, on the same day by him to Nickerson.

Immediately previous to the transaction on the 21st of Nov. 1837, between the plaintiff and the defendant, the latter was the owner of the right in equity of redeeming the mortgage to Nickerson. That right in equity he conveyed to the plaintiff in mortgage as security of certain indebtedness. No exception appears to have been made in the conveyance, and there is nothing in the case showing that the former mortgage was mentioned or known to the plaintiff; and it may not be material to the present inquiry that it should have been known or otherwise. The covenants in the mortgage to the plaintiff were in the usual form of those in a warranty deed, and consequently contained the covenant to warrant against the prior mortgage. On the fifth of October, 1843, a new contract was made between the parties to this suit. The defendant, by a quit-claim deed, made conveyance of the land. The consideration stated in the deed was only nominal, but it appears that the former relations between them, entered into at the time the mortgage was given, were changed. The mortgage to the plaintiff, which is particularly referred to in the description of

the land, is, in the deed last given, fully canceled and discharged. The deed then executed is all the evidence, which the case affords of the contract made at that time, and from it, we must conclude, that in consideration of the discharge of the mortgage, the plaintiff obtained an indefeasible title to the defendant's right in the land described in the mortgage; and the defendant's covenants were materially altered. This case is different from that of *Crosby* v. *Chase*, 17 Maine, 369, which is relied upon by the plaintiff. In that case, a deed was executed by the mortgager, and received by the mortgagee, in which was recited that the premises were the same, which the mortgagee conveyed to the mortgager, and of which the latter gave a mortgage, the same day, for the security of the payment of the purchase sum, and then is added, " and this deed is intended to cancel said mortgage and the notes given for the purchase sum." The Court held that the former mortgage was notwithstanding undischarged and in full force. But the reason for this opinion was, that the payment of the original sum secured by the mortgage was defeated by an attachment of the mortgager's right, and by the agreement, which was in evidence in the case, the contract of discharge was not to be operative, if the title should fail by reason of the attachment. Here the plaintiff received the quitclaim deed, which was all that the contract then made required. The title intended to be secured thereby was the defendant's right in equity of redeeming the mortgage to the plaintiff. This right, the plaintiff caused to be canceled by the consideration of this discharge of the mortgage, and the result of the transaction was the same as it would have been, if instead of the mortgage the defendant had, on said 21st of November, 1837, given a deed similar to that of Oct. 5, 1843.

In the deed, by which the defendant released his right to the land described therein, he covenanted that the plaintiff should hold it, so that neither he nor his heirs, nor any person claiming from or under him or them, should by any way or means claim or demand any right or title to the premises or any part thereof forever.

The law has not appropriated any particular form of words to the creation of a covenant; therefore any words will be sufficient, to show the intention of the parties.  4 Cruise, 447 and 449 ; *Lent* v. *Norris*, 1 Burr. 290 ; Buller's N. P. 156 ; Croke James, 391.  And all deeds are to be construed by the same rule.  *Ellis & al.* v. *Welch*, 6 Mass. 246.

The case does not show, that in any transaction between the parties, reference was made to the mortgage to Nickerson. When the last deed was given there was no agreement touching this mortgage.  The defendant's notes secured thereby were outstanding and unpaid, and were binding upon him alone ; the plaintiff assumed no liability concerning them.  If the mortgage to the plaintiff had been discharged in any other mode than by a release of the mortgager's interest in the land, the defendant would hold the land subject to Nickerson's mortgage.  If the defendant, after his deed of the 5th of Oct. 1843, had paid the notes, which he owed, to Nickerson, and thereby discharged that mortgage, it is not perceived by what contract, either express or implied, the defendant could legally claim reimbursement from the plaintiff for the amount paid.

When the whole deed, of Oct. 5, 1843, is taken together, there is nothing in it, which can be construed to restrict the conveyance, as really intended, simply to the right, then in the defendant.  If that was the design of the parties, such comprehensive terms after the habendum, would never have been incorporated into the deed.  The defendant did not intend to convey a title, which would be indefeasible against all, nor did he so agree ; but only against claims and titles caused by him, or those claiming under him.  The latter must be understood to refer as well to claims created by him, then existing ; to incumbrances, upon the title, which he had previously made ; as to those, which might thereafter be derived from himself.  *Comstock* v. *Smith*, 13 Pick. 116.

The mortgage to Nickerson, was a legal claim upon the title in the nature of an incumbrance, which was liable to be asserted at any time, against the possession and the right of the plaintiff, under his deed.  He was not bound to wait, till

such measures should be taken to deprive him of possession, when his remedy upon the defendant might be fruitless. But as under a deed, containing the common covenant of warranty against incumbrances, he, as grantee, might remove them, and resort to the covenant of his warrantor, in an action for indemnity.

Nickerson had made an assignment of his mortgage to Snow, prior to the deed under which the plaintiff claims; and Snow assigned the same to the plaintiff, before the commencement of this action, and delivered the note which was mentioned in the condition. These assignments are indicative of an intention on the part of Nickerson and his assignee to claim under them, and the right secured thereby is in the plaintiff. The measure of damages will be the price paid by the plaintiff, as a consideration of the assignment, if it does not exceed the amount due upon the mortgage note. *Prescott* v. *Trueman,* 4 Mass. 627; *Wyman* v. *Ballard,* 12 Mass. 304.

According to the agreement of the parties,

*Defendant defaulted.*